# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES S. CHAMBERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 19-133 (RJL) |
| ) | |
| MARK T. ESPER, and ) | |
| DEPARTMENT OF THE ARMY ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(July 28, 2021) [Dkt. ## 14, 17]

Plaintiff James S. Chambers ("plaintiff" or "Chambers"), an Army veteran honorably discharged in 1971 after deployment to Panama and Vietnam, brings suit against Mark T. Esper, in his official capacity as Secretary of the Army, and against the Department of the Army (together "defendants" or "the Army"), challenging a U.S. Army Board for the Correction of Military Records' ("ABCMR" or "Board") denial of his application for recharacterization of his honorable discharge from the Army as being based upon a medical disability. Plaintiff seeks a reversal of ABCMR's decision as arbitrary, capricious, not in accordance with law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and in violation of the parties' Joint Stipulation of Settlement and Dismissal. Plaintiff asks this Court to remand the matter to the ABCMR with instructions to comply with the parties' stipulation.. *See* Compl. ¶ 18. Before this Court are the parties' Cross-Motions for Summary Judgment. *See* Pl.'s Motion for Summary Judgment [Dkt. #14]

("Pl.'s Mot."); Defs.' Cross-Motion for Summary Judgment [Dkt. # 17] ("Defs.' Mot."). For the following reasons, defendants' motion for summary judgment [Dkt. # 17] is **GRANTED**, and plaintiff's motion [Dkt. # 14] is **DENIED**.

## BACKGROUND

### I.   Procedural History

Plaintiff joined the Army as an active duty Private on July 26, 1967. Def.'s Mot. at 7. On January 12, 1968, after completing Basic Combat Training and Advanced Individual Training, he was assigned to the Panama Canal Zone, where he served until July 1969. *Id.* at 8-11. Plaintiff was next assigned to Fort Bliss, Texas, where we awaited reassignment to Vietnam. *Id.* at 11. Plaintiff was deployed to Vietnam on October 30, 1969. *Id.* Plaintiff departed Vietnam on July 14, 1970, just prior to the expiration of his three-year enlistment contract, and was transferred to Fort Lewis, Washington, for out-processing and separation from active duty. *Id.* at 13. At the time of his separation from the Army, plaintiff had been promoted to the noncommissioned officer rank of Sergeant (E-5).

During his three years of active duty service, plaintiff sought and received medical and psychiatric care on multiple occasions. First, on October 27, 1967, during his Advanced Individual Training at Fort Bliss, plaintiff was hospitalized for possible appendicitis, found medically qualified for duty, and discharged with no limitations. Def.'s Mot. at 8 (AR 10, 647-648). Second, on June 12, 1968, while assigned to the Panama Canal Zone, plaintiff was hospitalized at Coco Solo Hospital in Panama after being involved in a vehicle accident where he jumped from the driver's seat of a jeep while it

was moving. *Id.* at 12 (AR 10, 136). The subsequent psychiatric consultation resulted in a final diagnosis of "transient stress reaction, manifest by depression," for which the psychiatrist determined that no follow-up appointment was necessary. *Id.* at 13. Third, on January 11, 1969, while still assigned to the Panama Canal Zone, plaintiff was again hospitalized at the Coco Solo Hospital with a headache, chest pain, and complaints that he was "overworked in his job as an artillery mechanic, and he was unhappy with his assignment in the Panama Canal Zone." AR 11, 137. A psychiatric evaluation found that plaintiff "was immature and that his symptoms were due to transient situational stress," and the psychiatrist diagnosed plaintiff with "personality pattern disturbance, transient, situational," and prescribed Valium. *Id.*

Back at Fort Bliss, on October 11, 1969, medical providers evaluated plaintiff for headaches and noted that he was "quite hostile and anxious, and that he was afraid he was going to tear up the barracks." AR 12, 662. Plaintiff was prescribed medication to reduce anxiety, but the examination did not uncover any abnormalities. *Id.* Plaintiff returned to military duties and was next deployed to Vietnam on October 30, 1969. *Defs. Mot.* at 11. Six months into that tour, plaintiff was referred to the Neurological Psychiatric Clinic at the 71st Evacuation Hospital in Vietnam with agitation, nervousness, and "probable situational anxiety," which resulted in a diagnosis of situational anxiety and a recommendation that Chambers "return to duty." AR 12, 697.

Chambers continued his service in Vietnam through the remaining duration of his enlistment contract. AR 13. He underwent a medical evaluation as required for all military personnel prior to separation, which "did not identify any physical or mental conditions

that would render him unfit or medically unqualified," underwent other routine separation procedures, and eventually was termed "qualified for separation" and was voluntarily separated with an Honorable characterization of service on July 27, 1970. AR 13, 57, 223-24. Throughout his three years of active service, Chambers was regularly evaluated as "Excellent" for both conduct and efficiency, was regularly promoted to higher rank, and left the Army at the rank of Sergeant. *See generally* AR.

Eleven years later, Chambers underwent a medical examination for the purpose of voluntarily enlisting in the New York Army National Guard. AR 13, 225-26. The psychiatric evaluation component of the medical exam was normal, indicating no psychiatric issues or diagnoses. AR 226. Chambers was found to be medically fit for any military assignment and enlisted in the National Guard as a Unit Clerk. AR 13, 218-221. The following year, Chambers re-enlisted as a Sergeant in the California Army National Guard. AR 14, 228-30. He was honorably discharged on October 31, 1983.

In 1987, Chambers was diagnosed with Post Traumatic Stress Disorder ("PTSD") and "is currently rated as 100 percent disable[d] by the VA for PTSD resulting from his Vietnam experiences." AR 6-7. In 1999, nineteen years after his honorable discharge from active service in the Army, Chambers applied to ABCMR requesting correction of his military records to reflect his 1970 separation from the Army as medical disability retirement due to PTSD. On March 16, 2000, the ABMCR "unanimously concluded that there was insufficient evidence in the record to grant Chambers a medical disability retirement and that the evidence presented did not demonstrate the existence of a probable error or injustice." *Defs. Mot.* at 18. After Chambers unsuccessfully requested

4

reconsideration, he challenged that decision in the United States Court of Federal Claims, arguing that the Board's decision was arbitrary and capricious under the APA. *Id.* The court upheld the Board's decision, finding that the "ABCMR reviewed the record and rendered a rational decision that plaintiff was fit for duty at the time of his separation" and therefore the decision was not arbitrary and capricious. *Chambers v. United States*, No. 03-1767-C (Fed. Cl. July 12, 2004). In 2006, the United States Court of Appeals for the Federal Circuit affirmed. *Chambers v. United States*, 417 F.3d 1218, 1227-28 (Fed. Cir. 2005). The United States Supreme Court denied certiorari on December 5, 2005.

After filing several additional motions with the ABCMR seeking reconsideration of its 2000 denial of his request for correction of his military records, Chambers filed suit in this Court in 2015. *See* AR 344-45. Chambers challenged the Army's one-year limitation period for filing motions for reconsideration as arbitrary, capricious, and contrary to law. That case, however, was dismissed pursuant to a joint stipulation of settlement and dismissal, under which the ABCMR agreed to substantively reconsider Chambers' "request for disability retirement due to Post-Traumatic Stress Disorder." *See id.*

On remand to the ABCMR, Chambers provided additional supporting documentation for his request that his separation from the Army in 1970 be reclassified as a medical disability retirement due to PTSD: (1) a 2006 statement by his mother, AR 15-16, 132-35; and (2) a "forensic psychiatric report" compiled in September 2007 by psychiatrist Dr. Kaye. The ABCMR also sought and received an advisory opinion from the Army's Office of The Surgeon General ("OTSG"). The Board voted to grant partial relief to Chambers by referring his case to the Army's OTSG to determine if he should

have been referred to the disability evaluation system at the time of his separation in 1970. AR 19, 65-90. The MEB physicians reviewed the entire record and issued a memorandum concluding that Chambers would not have qualified for an MEB at the time of his separation because "he was not sufficiently impaired from performing his duties to warrant a MEB." AR 29, 96-97.

After Chambers filed the instant lawsuit in 2019, the ABCMR considered his request for reclassification of his 1970 separation from the Army as a medical disability retirement, and in November 2019 voted unanimously to deny plaintiff's application. Both parties thereafter filed for summary judgment in this case.

## II.     Statutory Scheme

Under 10 U.S.C. § 1201 *et seq.*, Congress established a statutory framework under which the Department of Defense determines whether a member of the military is medically fit for duty and, if not, whether that member should receive a disability rating and compensation for the medically unfitting condition. *See Chatman v. DOD*, 270 F. Supp. 3d 184, 185 (D.D.C. 2017) (citing 10 U.S.C. §§ 1201-22, 1552-59).

The Army regulations in effect at the time of Chambers' discharge in 1970, rather than current regulations, must guide my analysis. Under DoD's process in 1970, a soldier is first referred to the medical evaluation board ("MEB") for evaluation if the soldier has a medical condition "which may render [him] unfit for further military service and which fall below" required medical fitness standards. Army Regulation ("Army Reg.") 40-501, ¶ 3-1. But "[p]ossession of one or more of [the medical conditions] does not mean automatic retirement or separation from the Service." *Id.* ¶ 3-4. Instead, the MEB

evaluates whether the soldier meets the retention standard criteria in Army Regulation 40-501. *Id.*

If the soldier does *not* meet the retention standard, the MEB refers the soldier to a physical evaluation board ("PEB"). *Id.* ¶ 3-4; Army Reg. 635-40, ¶¶ 4-10, 4-13 (Sept. 1, 1990). The PEB then "consider[s] the results of the MEB, as well as the requirements of the soldier's [military occupational specialty],[1] in determining fitness" or unfitness. Army Reg. 40-501, ¶ 3-4; Army Reg. 635-40, ¶ 4-17. In other words, the PEB conducts "a more thorough investigation into the nature and permanency of the servicemember's condition and makes independent findings as to whether the servicemember is fit for duty and qualifies for disability retirement." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 85-86 (D.D.C. 2014). A case so referred begins with an informal evaluation and decision by the PEB. Army Reg. 635-40, ¶ 4-20. Thereafter, a soldier may either concur with the informal PEB decision or demand a formal hearing and present rebuttal findings and recommendations. *Id.* ¶ 4-21.

## ANALYSIS

### I. Standard of Review

"'Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record,'" as it is here. *Bloch v. Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (quoting

---

[1] A "military occupational specialty" ("MOS") identifies "a group of duty positions that require closely related skills" "without regard to levels of skills." Army Reg. 600-1, ¶ 6-4.

*Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)). In such cases, the district court "sits as an appellate tribunal" and "the entire case … is a question of law." *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (quotations omitted). Courts will thus defer to the agency's "findings of fact if they are supported by substantial evidence and the [Agency's] other findings and conclusions if they are not arbitrary, capricious, an abuse of discretion, or contrary to law." *Montgomery Kone, Inc. v. Sec'y of Labor*, 234 F.3d 720, 722 (D.C. Cir. 2000) (quotations and citation omitted); *see also* 5 U.S.C. § 706(2)(A).

As such, a court must generally defer to an agency's reasonable interpretation of the facts even if another interpretation would be plausible on the court's own review of the record. *See Fla. Gas Transmission Co. v. FERC,* 604 F.3d 636, 645 (D.C. Cir. 2010) ("When reviewing for substantial evidence [the Court] does not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision.") (citation omitted); *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) ("Substantial-evidence review is highly deferential to the agency fact-finder, requiring only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).[2]

---

[2] "The arbitrary and capricious standard of § 706(2)(A) is a 'catchall' that generally subsumes the 'substantial evidence' standard of § 706(2)(E)." *Schmidt v. Spencer*, 319 F. Supp. 3d 386, 391 n.3 (D.D.C. 2018) (citing *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be

8

Our Circuit accords heightened deference when reviewing decisions by military review boards, including the ABCMR. *See, e.g., Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)); *Schmidt*, 319 F. Supp. 3d at 391; *Chamness v. McHugh*, 814 F. Supp. 2d 7, 13 (D.D.C. 2011); *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009). A reviewing court will therefore "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Bowman Transp. Inc. v. Arkansas-best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)).

## II. The Board's Decision to Deny Plaintiff's Request for Reclassification was Neither Arbitrary and Capricious nor Unreasonable.

In its original 2000 decision denying plaintiff's request for reclassification, the Board correctly presumed, pursuant to the Army regulations in effect in 1970, that Chambers was fit at the time of his separation from the Army because he was, at that time, effectively performing his military duties. The United States Court of Appeals for the Federal Circuit affirmed the Court of Federal Claims granting judgment on the administrative record in favor of the United States, noting that

> in 1970, [Army Regulation] 40–501 provided that "transient personality disruptions of a nonpsychotic nature and situational maladjustments due to acute or special stress do not render an individual unfit." Chambers' pre-

required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense ...."); *accord Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007)).

9

> discharge diagnoses—"transient stress reaction," "transient situational distress," and "mild situational anxiety"—appear to fall squarely within the boundaries of [Army Regulation] 40–501. The Board likewise did not err in determining that Chambers' symptoms lacked the criteria for referral to a Medical Examination Board set out in [Army Regulation] 40–501, *i.e.,* "persistence or recurrence ... sufficient to require extended or recurrent hospitalization, necessity for limitations of duty or duty in protected environment or resulting in interference with effective military performance." Each of Chambers' three medical incidents was of short duration and had no effect on the scope or performance of his military duties. In sum, under the standards in existence in 1970, Chambers was fit for duty. This is not to say that, in retrospect, Chambers' symptoms appear unrelated to PTSD. Indeed, the VA deemed Chambers' PTSD service-connected and, ultimately, awarded him a 100 percent disability rating. Chambers, however, cannot now complain that the Army failed to diagnose him in 1970 with a psychological condition unknown until 1980.

*Chambers*, 417 F.3d at 1227-28. In its 2019 reconsideration of Chambers' request, the Board considered all of the evidence in the record, including the information before it at the time of the 2000 decision as well as the new evidence submitted by Chambers. Again, the Board unanimously concluded that because Chambers was never diagnosed with any psychiatric condition considered disqualifying in AR 40-501, and always returned to successfully perform his military duties, the conclusion that Chambers was not unfit at the time of separation was reasonable and supported by the record. *Defs. Mot.* at 27; AR 3-26.

The Board also considered the new evidence presented, including medical opinions submitted by Chambers' forensic psychiatrist and the Government. Plaintiff contends that the Board failed to address his four hospitalizations while serving on active duty. *Pl.'s Br.* at 13. However, the Board did specifically consider Chambers' hospitalizations and concluded that "the manifestation of any behavior

health problems at or near the time of his separation . . . was so minimal that it cannot be reasonably argued that the applicant was, at the time of his separation, unfit for duty." AR 26.

Plaintiff also claims that the Board did not adequately consider Chambers' Thorazine prescription, which plaintiff and his forensic psychiatrist expert claim indicates that the treating physician believed the patient had serious probable psychotic reactions. *Pl.'s Br.* at 13. Unfortunately for plaintiff, however, the Board did explicitly consider Chambers' Thorazine prescription, concluding that there is "no evidence that [Plaintiff] was prescribe[d] medication for any condition other than those condition cited in the records." AR 27. Under the "unusually deferential" approach of *Kreis*, 866 F.2d at 1514, the Board's consideration of all relevant facts and determination that any serious psychiatric condition would be noted in the medical records from the time is reasonable.

The Board also expressly weighed the opinions of Dr. Kaye and the opinions of the OTSG 2016 opinion. AR 27. The Board noted that Dr. Kaye's opinion "tends to minimize the fact that the applicant was able to successfully complete his enlistment term; the fact that he did not require frequent behavioral health visits at or near the time of his separation; and the fact that he successfully re-entered the military in the 1980s." AR 27. The Board noted that the 2016 OTSG opinion, which concluded that Chambers should have been referred to a MEB at the time of discharge, was premised on the incorrect finding that Chambers was "sent home

from theater," which it finds to be "evidence that he was considered unfit for continued combat duty." AR 347. In fact, as the record makes clear, Chambers was sent home from Vietnam in 1970 due to his expiring enlistment contract, and was given "Excellent" performance ratings leading up to his separation. AR 27, 166. Due to this "fatal flaw" in the OTSG advisory opinion's reasoning, the Board appropriately extended the opinion less credibility.

The Board reasonably assessed the strengths and weaknesses of the competing medical opinions, considered all of the evidence presented, and ultimately found the November 2016 report and findings from the Army MEB doctors to be the most persuasive of the opinions provided. The ABCMR noted its agreement with the assessment of the Army MEB doctors that Chambers, at the time of his discharge, "did not exhibit a degree of impairment that would have warranted a MEB in 1970." AR 27.

Plaintiff also claims that the Board improperly considered his enlistment with the National Guard as evidence of fitness. Pl.'s Br. 18-19. Not so. Plaintiff's voluntary enlistment in the National Guard more than a decade *after* his 1970 separation, and successful completion of the medical assessments required for that enlistment, are reasonable factors for the Board to consider as evidence of fitness here. *See Hall v. DOD*, No. 19-cv-31441, 2021 U.S. Dist. LEXIS 21139, at *14 (D.D.C. Mar 17, 2021); AR 28 (stating that if Chambers' PTSD was debilitating in 1981, the intake medical personal would have likely rejected him as unfit).

Chambers has surely put forward a sympathetic case based on the difficult duty he endured during his seven months in Vietnam. Indeed, the Board acknowledged such and the VA later granted him a disability rating for PTSD. The Board is accurate, however, to point out that the VA applies different standards for assessing a disability claim than the Army applies to determine unfitness at the time of separation. *See* AR 28, 32. In the final analysis, the Board in this case considered all of the evidence presented to it and undertook a full substantive reconsideration of Chambers' request for reclassification and came to a reasoned decision. Their decision was neither arbitrary and capricious, nor unreasonable, and must be upheld.

## CONCLUSION

For all of the foregoing reasons, defendants' Cross-Motion for Summary Judgment [Dkt. #17] is **GRANTED** and plaintiff's Motion for Summary Judgment [Dkt. #14] is **DENIED**. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge